UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LASHANTI IVERY,

                Plaintiff,

v.

ANDREW SAUL, COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

6:18CV6290

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14 (plaintiff), 18 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 9 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 21, reassignment Order July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Lashanti Ivery" or "plaintiff") filed an application for disability insurance benefits on October 8, 2014 [R. 11], for an alleged onset date of August 30, 2013 [R. 11]. That

application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated February 7, 2017 [R. 11], that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on February 13, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on April 12, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 18), and plaintiff duly replied (Docket No. 19). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 40-year-old as of the onset date with a high school education, last worked as a certified nurse assistant and a babysitter [R. 27]. Plaintiff claims the following impairments deemed severe by the ALJ: mild cervical and lumbar degenerative disc disease; shoulder tendonitis; sacroiliac dysfunction; lumbar strain; depression; and anxiety [R. 13]. Plaintiff also claims she suffers from hallucinations but these were due to her medicine and the hallucinations stopped when she ceased taking the medication [R. 14].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff testified that she suffered from disability based on neck, back, and right shoulder pain, depression, and anxiety [R. 271, 16]. Plaintiff was injured on the job on November 27, 2012 [R. 17, 359]. Plaintiff received chiropractic care for two months but plaintiff stopped follow up despite it appearing to alleviate her pain [R. 17]. The ALJ concluded that plaintiff

received treatment for alleged disabling impairments, the treatment was deemed "essentially routine and/or conservative in nature" [R. 25].

Treating physician, Dr. Matthew Grier, a board-certified physiatrist for treatment of upper and lower back pain, treated plaintiff throughout 2014 [R. 18]. On November 21, 2014, Dr. Grier diagnosed plaintiff with sacroiliac dysfunction, cervical, thoracic, and lumbar strain, bicipital tendinitis on the right, and reactive depression and anxiety [R. 428, 18]. Dr. Grier examined plaintiff for a workers' compensation examination on March 25, 2015, plaintiff complained of worsening shoulder pain, and the doctor found that plaintiff had poor and limited range of motion in her lumbar spine [R. 693-95]. Dr. Grier reported in a workers' compensation Doctor's report of MMI/Permanent Disability that plaintiff could never climb, could occasionally kneel, bend, stoop, or squat5, and could frequently lift 10 pounds, push or pull 20 pounds [R. 683, 681]. Dr. Grier also noted that plaintiff needed to be able to change body positions as needed [R. 683]. The doctor concluded that plaintiff could perform "light work," defined in that form as being able to exert up to 20 pounds of force occasionally with physical demands more than sedentary work [R. 683].

Dr. Grier noted in a physical assessment of employability, on April 29, 2016, that plaintiff had back pain with abnormal squatting, cervical pain with headaches, lumbar strain, diminished reflexes, and atraumatic extra ocular muscles [R. 868-71, 23]. Dr. Grier opined that plaintiff was moderately limited in standing, walking, sitting, pushing, pulling, bending, lifting, and carrying [R. 871], finding that plaintiff was abnormal in squatting [R. 870]. The ALJ gave this opinion partial weight because the opinion also listed normal findings and noted that plaintiff could perform all exertion with moderate limitations [R. 23, 871].

3

The ALJ gave great weight to the evaluation of consultative examiner, Dr. Janet Williams since it was consistent with the findings and opinions of plaintiff's treating doctors [R. 437, 21, 26]. Dr. Williams acknowledged that plaintiff had some physical limitations but opined that it reduced her residual functional capacity but did not rendered her unable to work [R. 26]. The ALJ also gave some weight to independent medical examiner, Dr. James McGlowan [R. 467, 18, 26-27], who recommended conservative care, advised that plaintiff could return to work [R. 467]. The ALJ did not fully adopt Dr. McGlowan's opinion because it was rendered under the different worker's compensation standard [R. 26-27].

As for plaintiff's mental limitations, applying the "Paragraph B" criteria, plaintiff had mild limitations in understanding, remembering or applying information and in interacting with others; she had moderate limitation in concentration, persisting, or maintaining pace; and no limitation in adapting or managing herself [R. 14-15]. The ALJ gave great weight to Dr. Adam Brownfield, Ph.D. [R. 432, 26], who evaluated plaintiff on November 24, 2014, diagnosed plaintiff with depressive disorder due to physical pain, and found no evidence of limitation in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, and relating adequately with others, while being moderately limited in dealing with stress [R. 434]. While the results of her evaluation were consistent with psychiatric problems, Dr. Brownfield said they did not appear to be significant enough to interfere with plaintiff's daily functioning [R. 434]. The ALJ gave Dr. Brownfield's opinion such weight because it was "well supported by the treatment notes seen at DePaul PROS" [R. 26]. The ALJ gave partial weight to all

4

psychical/psychological assessments, concluding that each opinion lacked evidentiary support and were not written for a one-year period, and made on check box forms without internal support [R. 25].

On January 16, 2015, Julie Sengstock, LMSW of DePaul PROS, completed a psychological assessment for determination of employability [R. 864]. Sengstock found plaintiff was very limited in her capacity to maintain attention and concentration for rote tasks and moderately limited in other mental health categories [R. 866, 22].

The ALJ found that plaintiff had a residual functional capacity to perform light work [R. 16]. The ALJ also found that plaintiff can lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally; push and/or pull up to 10 pounds frequently; sit for up to 6 hours of an 8-hour workday, stand and/or walk for up to 6 hours of an 8-hour day; plaintiff is able to occasionally crouch, balance, stoop, kneel, crawl, reach, and climb stairs and ramps, but can never climb ladders or scaffolds; plaintiff can frequently finger and handle, but can stand for no more than 30 minutes and must then briefly sit down. Plaintiff can do no overhead reaching with the right dominant arm. Plaintiff is limited to simple routine tasks. [R. 16.]

The ALJ found that plaintiff was unable to perform past relevant work as a certified nurse assistant or a babysitter as both occupations are medium exertion jobs [R. 27]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as counter clerk, usher, or chaperone, all light exertion jobs [R. 28], or such sedentary jobs as call out operator and surveillance system monitor [R. 28]. As a result, the ALJ held that plaintiff was not disabled [R. 28-29].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the

[Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>   (1) whether the plaintiff is currently working;
>
>   (2) whether the plaintiff suffers from a severe impairment;
>
>   (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>   (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
>   (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the

7

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the residual functional capacity assessment is not supported by substantial evidence (Docket No. 14, Pl. Memo. at 21-32). She contends the ALJ arbitrarily weighed the medical opinions in the records (id. at 22). She claims that there is no support for limitations in the residual functional capacity on her ability to stand or sit that she can stand for no longer than 30 minutes and then must briefly sit [R. 16] (id. at 23-24). Since she needs to change positions as needed or at will, this erodes her ability to perform light or sedentary work (id. at 24). Plaintiff faults the ALJ for not incorporating limitations found in medical opinions (id. at 22) and failed to explain rejections of portions of opinions (id.). Plaintiff also faults the ALJ for rejecting a "check box" form used by LMSW Julie Senstock [R. 22, 864-67] and LMHC Kristin Tripp [R. 23, 872-83] merely because of the format (id. at 29-30). The ALJ also did not weigh the March 25, 2015, opinion of Dr. Grier [R. 681-83], but the ALJ rejected this doctor's opinion (like similar medical opinions rendered on worker's compensation forms) since it was on a worker's compensation form [R. 26-27]. The ALJ overly relied upon consultative evaluators and less to treating sources (id. at 24-27, 27-29, 32).

Defendant responds that the ALJ need not "reconcile every conflicting shred of medical testimony," (Docket No. 18, Def. Memo. at 27, quoting Stevenson v. Berryhill, No. 16CV379, 2017 WL 2349733, at *3 (W.D.N.Y. May 31, 2017)).

As for plaintiff's claimed mental impairments, she contends that the ALJ erred in his analysis, failing to credit the opinions of Senstock and Tripp (Docket No. 14, Pl. Memo. at 31-32).

Finally, the ALJ erred in evaluating plaintiff's credibility (id. at 32-35). First, the ALJ failed to acknowledge plaintiff's attempts to obtain treatment and relief (id. at 32-33). Plaintiff was told to stop chiropractic care because its effectiveness plateaued and plaintiff was advised to start physical therapy (id. at 33) [R. 17, 318-33, 341, 345]. Plaintiff went to physical therapy when she had coverage for it (see id. at 33-34).

I. Medical Opinions

Plaintiff faults the ALJ for finding in the residual functional capacity that she had no limitations for sitting, standing, or walking aside from her inability to stand for longer than 30 minutes and then must briefly sit down (Docket No. 14, Pl. Memo. at 22). She contends that the medical record established that she needed the ability to change positions as needed (id. at 23, citing, e.g., [R. 853, 858 (PA-C Brianne Sisca), 683 (Dr. Grier), 760 (vocational rehabilitation counselor David Morgan), 910 (Dr. Oliver Masaba), 440 (Dr. Williams, finding mild limitations in ability to sit, stand, and walk), 16, 19, 21]). The ALJ partially credited Ms. Sisca's opinion where it supported the view that plaintiff could perform some work, but rejected limitations based upon low back pain that had "limited support in the medical evidence

9

of record due to mild degenerative disc disease and stenosis" [R. 19]. The ALJ appears to discount Dr. Masaba's opinion since he was to provide a psychological assessment [R. 24].

Defendant points out that the ALJ properly relied upon the opinion of Dr. Joanne Wu [R. 39, 345, 25] (Docket No. 18, Def. Memo. at 27). The ALJ concedes, however, that Dr. Wu rendered this opinion on July 17, 2013, months before the onset date, but the ALJ claims these opinions are consistent with subsequent medical evidence [R. 25]. Defendant also argues that Dr. Grier and the ALJ noted that plaintiff worked in providing child care that the ALJ deemed to be potentially "taxing physically and mentally" [R. 13, 25, 759] (Docket No. 18, Def. Memo. at 28), without considering whether that work afforded plaintiff the ability to change positions at will.

While, as defendant argues (id. at 26) it is the ALJ's duty to formulate the residual functional capacity assessment, Davis v. Colvin, No. 15CV6695, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017) (Payson, Mag. J.), there must be some medical record in evidence to support a particular finding within the residual functional capacity, see McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983). A search of the administrative record finds no support for the ALJ's particular finding that plaintiff can stand for no more than thirty minutes and then must briefly sit [R. 16]. It is not clear what evidence supports the 30 minutes standing then sitting finding, despite the assessment of the various medical opinions without indicating an express finding in that record to support the ALJ's finding. It appears that the ALJ rendered his own medical judgment to arrive at this particular residual functional capacity finding, this is improper and **requires remand**, see also Worden v. Comm'r, No. 18CV923, Docket No. 19, Order of Oct. 25, 2019, at 7-8 (Scott, Mag. J.).

The first hypothetical posed by the ALJ to the vocational expert assumed that the claimant could perform light work but without mentioning their duration for standing and required sitting [R. 103-04]. The vocational expert concluded that such a person could not work as a babysitter [R. 103]; this diminishes the ALJ's later contention that plaintiff could perform light work because she performed child care [R. 25]. The second hypothetical added the limitation that the claimant could stand no longer than 30 minutes, and then had to sit; the vocational expert opined that the three occupations she suggested (counter clerk, usher, chaperone) could still be performed but that "occupational base may be eroded based upon the specific employer and what they would allow for the individual" [R. 105] but with that base eroded by 50% [R. 106]. Thus, the error in setting forth a specific stand/sit functioning without a basis in the medical evidence requires remand.

II.     Plaintiff's Mental Condition

Plaintiff next argues that the ALJ erred in disregarding mental treatment notes source (LMSW Sengstock) while accepting the opinion of consultative examiner (Dr. Brownfield) based upon the treatment notes from the deemed less reliable Sengstock and DePaul PROS [R. 25, 21] (Docket No. 14, Pl. Memo. at 31). The ALJ gave this (among other psychological assessments) partial weight because they were rendered on checkbox forms and lacked support and explanations for findings [R. 22, 25]. While the checkbox forms without more are "not particularly informative," Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (Docket No. 18, Def. Memo. at 30); see also Shipp v. Colvin, No. 16CV919, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) (Scott, Mag. J.), the fact it comes from a checkbox form alone should not justify rejection of Sengstock's findings, Kain v. Colvin, No. 15CV6645, 2017 WL 279560, at *4

11

(W.D.N.Y. Jan. 23, 2017) (Geraci, Ch.J.) (Docket No. 19, Pl. Reply Memo. at 8-9, citing cases). It is inconsistent to reject the source of the opinion (recorded in this record in checkbox forms) that is later given more significant weight when the basis of the consultative examiner's opinion. Upon remand, plaintiff's mental impairments need to be reassessed.

III.    Plaintiff's Credibility Assessment

Upon remand, the ALJ can reassess plaintiff's credibility.  Plaintiff now argues that the ALJ found her was less credible since she either did not seek hospital treatment, sought conservative treatment, or discontinued treatment [R. 17, 24-25].  Plaintiff explains that she discontinued chiropractic treatment because the results plateaued and later had sporadic physical therapy because her sessions were dependent upon having coverage for them (see Docket No. 14, Pl. Memo. at 33-34).  These external considerations should be noted rather than categorically finding that plaintiff stopped treatment without explanation.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 14) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 18) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).  The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
November 7, 2019